# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
### NASHVILLE DIVISION

BRITTANY OXFORD,

Plaintiff,

v.

AMAZON.COM SERVICES, LLC,

Defendant.

Case No.: _____

**JURY TRIAL DEMANDED**

## COMPLAINT

Defendant, Amazon Services, LLC ("Amazon") has a policy that has a disparate impact on persons with disabilities, like Plaintiff Brittany Oxford. Ms. Oxford is a dedicated employee and qualified individual with a disability who has been employed for over 10 years. Ms. Oxford has worked successfully with a work from home accommodation. However, when Amazon instituted a mandatory return to work policy that fails to consider the individual nature of either the essential functions of a particular position, or the employee's disability and specific needs, Oxford has experienced ongoing, egregious discrimination and retaliation because of her disability. Where Ms. Oxford had been successfully performing her job with a work from home accommodation, she was forced back to an inhospitable work environment that defied her medical provider's orders and where she was singled out by being forced to work under a "desk tent" with posted signage, using noise cancelling headphones. Through its actions, Defendant has violated the Americans with Disabilities Act and the Tennessee Disability Act.

## I. NATURE OF THE ACTION

1. This is an action for disability discrimination, failure to provide reasonable accommodation, retaliation, and constructive discharge under the Americans with Disabilities

1

Act, 42 U.S.C. § 12101 *et seq.* ("ADA"), and the Tennessee Human Rights Act, Tenn. Code Ann. § 4-21-101 *et seq.* ("THRA").

2. Plaintiff Brittany Oxford is a ten-year Amazon employee who suffers from severe Generalized Anxiety Disorder, and ADHD, conditions that substantially limit her ability to work, concentrate, and interact with others in an office environment.

3. In September 2024, Oxford requested a 100% remote work accommodation. Amazon denied that request. Rather than engage in the individualized, good-faith interactive process required by the ADA, Amazon applied its September 2024 Return-to-Office Policy ("RTO Policy") categorically, offered Oxford a standardized set of in-office alternatives that her treating provider had not recommended and that did not address her functional limitations, and declared those alternatives to be reasonable without any individualized analysis.

4. When Oxford returned to the office in June 2025, Amazon had not provided the accommodations it promised. Her disability worsened materially as a direct result. Her physician renewed the request for the work from home accommodation. Amazon refused to consider it. Oxford was ultimately compelled to take unplanned medical leave.

5. Oxford brings this action for compensatory damages, punitive damages, back pay, and all other appropriate relief.

## II. PARTIES

6. **Plaintiff Brittany Oxford** is a resident of Tennessee. She has been employed by Amazon since October 2015 and currently serves as a Sr. Manager, Carrier Escalations, at Amazon's BNA12 Corporate Nashville, Tennessee office.

7. **Defendant Amazon.com Services, LLC** is a Washington limited liability company registered to do business in the State of Tennessee. Defendant operates its BNA12

2

corporate office in Nashville, Tennessee, where Plaintiff is employed. Defendant's registered agent for service of process is Corporation Service Company, 2908 Poston Ave., Nashville, TN 37203-1312. Defendant employs approximately 1.5 million employees nationally and is valued in excess of $2 trillion.

## III. JURISDICTION AND VENUE

8. This Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331, as Plaintiff's claims arise under the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.*

9. This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

10. Venue is proper in the Middle District of Tennessee pursuant to 28 U.S.C. § 1391(b) because Plaintiff resides and is employed in this District, Defendant maintains substantial operations in this District, and a substantial part of the events giving rise to Plaintiff's claims occurred in this District.

11. Plaintiff timely filed a Charge of Discrimination with the Equal Employment Opportunity Commission, EEOC Charge No. 494-2026-00098, on October 9, 2025. Plaintiff has exhausted her administrative remedies because more than 180 days have passed since the filing of the initial EEOC charge.

## IV. STATEMENT OF FACTS

### A. Oxford's Employment and Disabilities

12. Oxford has been employed by Amazon for approximately ten years, most recently as a Sr. Manager, Carrier Escalations, at Amazon's Nashville corporate office (BNA12). She is a high-performing employee with a strong track record throughout her tenure.

3

13.     Oxford suffers from severe Generalized Anxiety Disorder, PTSD, and ADHD. These conditions substantially limit major life activities including working, concentrating, and interacting with others. Her conditions are documented and have been managed with the support of treating providers throughout her employment.

14.     Oxford's role is performed primarily through virtual collaboration. Her team members, manager, and the colleagues with whom she most frequently works are located in other states and cities. All team meetings, one-on-one meetings, and cross-functional work are conducted virtually. In-person attendance at the Nashville office serves no collaboration function that cannot be performed remotely.

**B. Amazon's Centralized Accommodation System: The A to Z App and DLS**

15.     Amazon requires all employees seeking a reasonable accommodation to do so through its A to Z App ("the App") and its Disability and Leave Services ("DLS") department, a centralized, non-regional unit that handles accommodation requests on a nationwide basis.

16.     Case managers within DLS are not local to the facilities where disabled employees work, have no knowledge of the specific work environment, and possess no independent decision-making authority. The entire DLS Team is virtual. They are required to adhere strictly to Amazon's centralized policies which give little room for individualized assessment.

17.     Case managers are frequently reassigned without explanation or notice, requiring disabled employees to repeatedly re-explain their conditions, re-submit medical documentation, and restart the interactive process from the beginning.

18.     The A to Z App routinely loses, ignores, or fails to process medical documentation properly. Employees are repeatedly told that their documentation is "insufficient"

despite having submitted complete records. The App has suffered outright technical failures, including HTTP 503 errors that render the system inaccessible.

19. Because managers and supervisors cannot approve accommodations outside of the A to Z App, employees who need reasonable accommodations suffer, even when their local managers want to help but cannot act without DLS authorization; DLS cannot be reached meaningfully; and the App provides no mechanism for genuine interactive dialogue.

20. Amazon's own onsite medical provider, Crossover Health, has acknowledged that Amazon "regularly denies medical reasonable accommodations as simple as extra breaks or lower scanner rate quotas."

21. Upon information and belief, Amazon's reliance on the A to Z App and DLS is a deliberate policy choice designed to maximize denial rates and minimize the cost of accommodating disabled employees, with full knowledge that the system routinely fails to comply with the ADA.

**C. Amazon's Return-to-Office Policy**

22. In September 2024, Amazon announced a company-wide RTO Policy requiring all corporate employees to return to the office full-time effective January 2025.

23. The RTO Policy does not contain any exception for employees with disabilities who require remote work as a reasonable accommodation. Upon information and belief, Amazon takes the position that in-person attendance is an essential function of every corporate job, regardless of the actual duties performed and regardless of the nature or severity of the employee's disability.

24. Upon information and belief, after the 2024 RTO mandate, Oxford is not aware of any corporate employee that has been permitted to work remotely as a permanent reasonable

5

accommodation following the policy's implementation, regardless of the strength or nature of the supporting medical documentation.

**C. Oxford's Accommodation Request and Amazon's Denial**

25.     In September 2024, Oxford formally requested a 100% remote work or private office accommodation for her Generalized Anxiety Disorder and ADHD. Her treating provider documented that in-office work substantially exacerbated her symptoms and that remote work was the appropriate and necessary accommodation.

26.     In February 2025, Amazon denied Oxford's request. Amazon offered in-office alternatives: a private office, noise-canceling headphones, "Do Not Disturb" signage, and environmental controls over her workspace. In communicating this denial, Amazon stated: "After a recent internal review, it has been confirmed that while working from home has been previously approved, we are now in a position to move forward with the reasonable in-office accommodation as an alternative. We believe these adjustments will help optimize productivity and ensure alignment with the company's evolving needs."

27.     Amazon's denial was not based on individualized analysis of undue hardship. It was based on the categorical application of the RTO Policy. Amazon's reference to "evolving needs" confirms that business convenience, not a legitimate operational necessity, drove the decision.

28.     On February 17, 2025, Oxford requested an appeal of Amazon's decision. Amazon denied the appeal, stating it was "required to move forward" with the in-office alternative.

**D. Return to the Office: Promised Accommodations Not Provided**

6

29.     In June 2025, Oxford returned to the office. The accommodations Amazon had promised were not in place. Rather than a private office, Oxford was assigned a standard desk with a "desk tent" – a tent-style privacy shade – wireless noise-canceling headphones, "privacy" and "Do Not Disturb" signage, and a HEPA filter. There was no private office. Further, there was often someone occupying her assigned desk.



Fig. 1 – Desk Tent



Fig 2. "Private" Signage



Fig 3. "Do Not Disturb" Signage

Case 3:26-cv-01060    Document 1    Filed 07/24/26    Page 8 of 15 PageID #: 8

30.     The tent/privacy shade drew immediate attention and regular questions from coworkers, effectively broadcasting Oxford's disability to her entire workspace. Oxford was required to wear noise-canceling headphones for the duration of eight-hour shifts. The headphones worsened her symptoms and caused severe headaches. Her assigned desk was not in a low-traffic area and was routinely occupied by another employee; Oxford's manager told her to find another desk.

31.     Even the in-office alternatives Amazon had promised as the basis for denying remote work were not consistently available. Amazon changed her accommodations without notice or discussion. The interactive process, such as it was, had ended with denial; Amazon made no effort to revisit the adequacy of its alternatives once Oxford returned.

**E. Worsening Condition and Renewed Request**

32.     Oxford's disability worsened materially as a direct result of being forced to work in the office without adequate accommodation. Her treating provider renewed a request for remote work in light of Oxford's documented deterioration. Amazon refused to consider the renewed request, taking the position that it had already resolved her accommodation through the in-office alternatives.

33.     Oxford was ultimately compelled to take unplanned medical leave, a foreseeable consequence of Amazon's refusal to provide the accommodation her physician had prescribed and its insistence on maintaining conditions that her provider had documented as medically harmful.

**F. EEOC Proceedings**

34.     Oxford filed her Charge of Discrimination with the EEOC on October 9, 2025. Amazon filed a Statement of Position denying discrimination. The undersigned counsel filed a

9

formal rebuttal on Oxford's behalf on February 20, 2026, challenging Amazon's factual misrepresentations and the adequacy of its in-office alternatives.

**G. Ongoing Harassment**

35. In or around March 2026, Oxford began receiving notes on her desk that she perceived as harassing and the notes exacerbated her concern that she would continue to be disturbed.

36. Oxford was finally moved to a more private office in May 2026. However, she continues to feel discriminated against, harassed and humiliated each day she comes to work.

37. Since her complaints, Oxford has been assigned an entirely new position.

38. As a result of the ongoing harassment, discrimination and retaliation, Oxford has been forced to seek intensive mental health treatment requiring extended accommodation leave.

39. To date, Oxford continues to be denied reasonable accommodation.

## V. CAUSES OF ACTION

### COUNT I
### Failure to Provide Reasonable Accommodation
*Violation of the Americans with Disabilities Act, 42 U.S.C. § 12112(b)(5)*

40. Plaintiff realleges and incorporates all preceding paragraphs as if fully set forth herein.

41. Oxford is a qualified individual with a disability. She made her disability and need for accommodation known to Amazon, provided supporting documentation from her treating provider, and requested remote work, an accommodation that Amazon had previously approved and that Oxford had demonstrated did not impair her performance or Amazon's operations.

10

42. Amazon denied Oxford's request not through individualized analysis but through categorical application of its RTO Policy, offering standardized alternatives with no bearing on whether those alternatives would address Oxford's specific functional limitations or satisfy her treating provider's recommendations.

43. The in-office alternatives Amazon offered, i.e., headphones, a privacy shade, signage, and a HEPA filter, did not address Oxford's psychiatric disabilities. They did not reduce the sensory and social stimuli that exacerbate her conditions. They were not recommended by her treating provider. They caused additional harm, including severe headaches from prolonged headphone use. Amazon failed to engage in the good-faith interactive process required by the ADA.

44. Defendant's conduct was willful and undertaken with malice or reckless indifference to Plaintiff's federally protected rights, entitling Plaintiff to compensatory damages, punitive damages, back pay, attorneys' fees and costs, and all other relief this Court deems just and proper.

## COUNT II
### Disability Discrimination
*Violation of the Americans with Disabilities Act, 42 U.S.C. § 12112(a)*

45. Plaintiff realleges and incorporates all preceding paragraphs as if fully set forth herein.

46. Amazon discriminated against Oxford on the basis of her disability by denying her a reasonable accommodation that Amazon had previously provided, that Oxford's treating provider prescribed, and that Amazon's own operational reality, a fully virtual team, demonstrated was feasible without undue hardship.

11

47.     Amazon's RTO Policy is applied disparately: Amazon grants full remote status to employees returning from maternity leave through a "grace period" policy while categorically denying remote work to employees with disabilities regardless of the medical necessity.

48.     Amazon has verbally indicated to employees that it is trying to "get rid of accommodations" and that employees should expect accommodations to be "phased out" since the corporate direction is to "return to hub."

49.     Amazon's policies have resulted in disparate treatment of Oxford, as well as disparate impact on individuals with a disability like Oxford.

50.     Defendant's conduct was willful and undertaken with malice or reckless indifference to Plaintiff's federally protected rights, entitling Plaintiff to economic and compensatory damages, punitive damages, back pay, attorneys' fees and costs, and all other relief this Court deems just and proper.

**COUNT III**
**Retaliation**
*Violation of the Americans with Disabilities Act, 42 U.S.C. § 12203*

51.     Plaintiff realleges and incorporates all preceding paragraphs as if fully set forth herein.

52.     Oxford engaged in protected activity by: requesting a reasonable accommodation; appealing Amazon's denial; and filing an EEOC charge and participating in EEOC proceedings. Amazon responded by modifying her in-office accommodations without notice or discussion, refusing to entertain her physician's renewed remote work request despite documented deterioration, and maintaining office conditions that caused her disability to worsen, compelling her to take unplanned medical leave and subjecting her to ridicule and harassment.

12

53.     The temporal proximity between Oxford's protected activity and the adverse actions taken against her, combined with the pretextual nature of Amazon's stated justifications, gives rise to a strong inference of retaliatory intent.

54.     Defendant's retaliatory conduct was willful and undertaken with malice or reckless indifference to Plaintiff's federally protected rights, entitling Plaintiff to compensatory and economic damages, punitive damages, back pay, attorneys' fees and costs, and all other relief this Court deems just and proper.

## COUNT IV
### Disability Discrimination
*Violation of the Tennessee Disability Act*

55.     Plaintiff realleges and incorporates all preceding paragraphs as if fully set forth herein.

56.     Amazon's conduct described herein constitutes unlawful disability discrimination.

57.     Plaintiff is a Tennessee resident employed at Amazon's Tennessee corporate office.

58.     Amazon's policies have a disparate impact on persons with a disability, in particular people with mental health disabilities, like Oxford.

59.     Plaintiff is entitled to all relief available under the TDA, including compensatory damages, back pay, attorneys' fees and costs, and injunctive relief.

## COUNT V
### Retaliation
*Violation of the Tennessee Disability Act*

60.     Plaintiff realleges and incorporates all preceding paragraphs as if fully set forth herein.

61.     Amazon's conduct described herein constitutes unlawful retaliation for making a complaint of disability discrimination, in violation of the TDA.

13

62. After Ms. Oxford filed an EEOC charge in December 2025, alleging disability discrimination and retaliation, she began receiving harassing notes on her desk, Amazon ultimately reassigned her to a different position, and Amazon continues to deny Ms. Oxford's requests for reasonable accommodation.

63. Plaintiff is entitled to all relief available under the TDA, including compensatory damages, back pay, attorneys' fees and costs, and injunctive relief.

## VI. PRAYER FOR RELIEF

WHEREFORE, Plaintiff Brittany Oxford respectfully requests that this Court enter judgment in her favor and against Defendant Amazon.com Services, LLC, and award the following relief:

A. Declaratory judgment that Amazon's denial of Plaintiff's remote work accommodation violated the ADA and the THRA;

B. Back pay and restoration of any lost wages, benefits, and employment privileges from the date of constructive discharge to the date of judgment;

C. Front pay in lieu of reinstatement, or reinstatement to Plaintiff's prior position with a remote work accommodation, at Plaintiff's election;

D. Compensatory damages for emotional distress, pain and suffering, and harm to Plaintiff's health and wellbeing in an amount to be determined by the jury;

E. Punitive damages for Amazon's willful, knowing, and reckless disregard of Plaintiff's federally protected rights;

F. Attorneys' fees and costs;

G. Pre- and post-judgment interest on all amounts awarded; and

H. Such other and further relief as this Court deems just, equitable, and proper.

14

**JURY DEMAND**

Plaintiff demands trial by jury on all issues so triable.

Respectfully submitted,

**HMC CIVIL RIGHTS LAW, PLLC**

*/s/ Heather Moore Collins*
Heather Moore Collins (# 026099)
Lucia V. Izzolo (#042496)
302 Peachtree St. Nashville, TN 37210
615-724-1996
615-691-7019 FAX
heather@hmccivilrights.com
lucia@hmccivilrights.com

15